```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JEANETTE GONZALEZ,                          :
                                            :
                Plaintiff,                  :
                                            :
        -against-                           :           **MEMORANDUM AND ORDER**
                                            :              10–cv–2941 (DLI)
MICHAEL J. ASTRUE, COMMISSIONER             :
OF SOCIAL SECURITY,                         :
                                            :
                Defendant.                  :
---------------------------------------------------------x
```
**DORA L. IRIZARRY, United States District Judge:**

Plaintiff Jeanette Gonzalez ("Plaintiff") filed an application for disability insurance benefits under the Social Security Act (the "Act") on April 23, 2008, alleging a disability that began on December 17, 2007. (R. 117-19.)[1] The Social Security Administration denied Plaintiff's application initially and on reconsideration. (R. 64-67.) Plaintiff appeared *pro se* and testified at a hearing held before Administrative Law Judge Gal Lahat ("ALJ") on September 21, 2009. (R. 4-46.) By a decision dated September 30, 2009, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (R. 48-63.) On April 29, 2010, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (R. 1-3.)

Now represented by counsel, Plaintiff filed the instant appeal seeking judicial review of the denial of benefits, pursuant to 42 U.S.C. § 405(g). The Commissioner now moves for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), seeking affirmation of the denial of benefits. (*See* Comm'r Mot. for J. on the Pleadings, Dkt. Entry 14.) Plaintiff cross-moves for judgment on the pleadings, seeking reversal of the Commissioner's decision and remand for

---
[1] "R." citations are to the correspondingly numbered pages in the certified administrative record. (*See* Dkt. Entry 19.)

1

further proceedings. (*See* Pl. Mot. for J. on the Pleadings, Dkt. Entry 16.) Plaintiff contends that the ALJ did not: (i) properly advise Plaintiff of her right to counsel at the hearing;[2] (ii) properly give controlling weight to Plaintiff's treating physician; (iii) properly evaluate Plaintiff's credibility; and (iv) present the vocational expert with an appropriate hypothetical. (*See* Mem. of Law in Opp'n to Def.'s Mot. for J. on the Pleadings and in Supp. of Pl.'s Cross-Mot., Dkt. Entry 17 ("Pl. Mem."), at 7-8.)

For the reasons set forth below, the Commissioner's motion is denied, and Plaintiff's motion is granted. The court remands the action for further administrative proceedings consistent with this Memorandum and Order.

## BACKGROUND

### I. Non-medical and Testimonial Evidence

On September 21, 2009, Plaintiff, appearing *pro se*, testified at a hearing concerning her disability claim. (R. 4–46.) At the time of the hearing, Plaintiff was forty-three years old and living with her husband and two sons. (R. 14.) She had obtained a GED and attended college for approximately one and a half years. (R. 15.) She also had obtained a certificate for secretarial science from the Taylor Business Institute, and received training as a corrections officer at the New York City Department of Corrections ("NYCDOC"). (R. 15-16, 140.)

Plaintiff held a variety of jobs during the past fifteen years.[3] From 1988 through 1992, and for part of 1995, she worked as a technician for photography labs. (R. 17-18, 133, 153-55, 169.) In 1996, she worked as a receptionist for a recycling company. (R. 17-18, 133, 153-56,

---

[2] The court does not discuss this ground further herein because this action is remanded on other grounds.

[3] The applicable regulations require the ALJ to consider all jobs that a claimant has had for the past fifteen years to determine her "past relevant work." 20 C.F.R. § 404.1560(b)(1).

2

169.) From March 1997 to March 2004, she worked as a corrections officer at the NYCDOC. (R. 17, 133, 156, 169.) As a corrections officer, she supervised and escorted inmates, conducted security searches, and responded to alarms. (R. 133, 156.)

Plaintiff suffered two work related accidents while working with the NYDOC. First, on October 19, 2003, Plaintiff slipped and fell while climbing stairs and injured her right hip. (R. 54, 300.) As a result, Plaintiff underwent an arthroscopic surgery performed by Dr. Srino Bharam on April 1, 2004. (R. 19-20, 310-312.) Following the surgery, Plaintiff continued to work at the NYCDOC, but only on "modified duty." (R. 18-20.) "Modified duty" included various tasks, such as "working the gates," which required constantly standing up, pushing and pulling heavy metal doors, and receptionist work.[4] (R. 18, 20.) Working as a receptionist required sitting for prolonged periods and answering phone calls. (R. 20.)

On March 1, 2007, Plaintiff underwent a second surgery, a right total hip joint replacement, performed by Dr. Eduardo Salvati at the Hospital for Special Surgery. (R. 178-84.) Plaintiff testified at the hearing that, although her surgery relieved a lot of her pain, she still felt pain when sitting or standing for prolonged periods. (R. 21.)

The second accident occurred on October 22, 2007. (R. 204.) While "pushing the restaurant door that was overlapped," Plaintiff strained her right hip and developed left hip pain that is aggravated by prolonged standing. (R. 204-05.) She continued to work on "modified duty" for two months until December 17, 2007, the date when her alleged disability began. (R. 16-18.)

Plaintiff claims that she can no longer work at her previous job as a receptionist, which

---

[4] Plaintiff describes her past work as a "receptionist," but according to the vocational expert, the job was really more like a "telephone operator." (R. 39-40.) Any distinction between the two positions is not relevant for purposes of this decision.

was the last position she had as part of her "light duty" with NYDOC, because she cannot sit for more than two hours at a time. (R. 26-28, 34.) At the time of the hearing, Plaintiff was receiving $1,809.00 on a monthly basis pursuant to a disability retirement pension from the City of New York. (R. 17.)

## II. Medical Evidence

### A. Medical Evidence Prior to Alleged Onset Date of December 17, 2007

Plaintiff's hip injuries were treated by five physicians: Dr. Barry Katzman, Dr. Srino Bharam, Dr. Steven Touliopoulos, Dr. Kiomars Moosazadeh and Dr. John Vlattas. (R. 211, 215-16, 234-35, 239, 243.) All five physicians practice medicine at the same medical group, the University Orthopedics of New York, PLLC. (R. 211, 215-16, 234-35, 239, 243.)

After the first accident, Dr. Katzman and Dr. Bharam recommended that Plaintiff use crutches, undergo physical therapy and was prescribed Vioxx and Vicodin for pain. (R. 300, 303, 305-06, 309.) On April 1, 2004, Dr. Bharam performed Plaintiff's first surgery. (R. 310-312.) The surgery consisted of a right hip arthroscopy, anterior and posterior labral debridement, posterior capsular plication, anterior and posterior capsulorrhaphy, microfracture of the anterior superior acetabulum, removal of loose body, partial synovectomy, and ligamentum teres shrinkage. (R. 310.)

On October 15, 2004, at a follow-up visit with Dr. Bharam, he recommended that Plaintiff avoid prolonged sitting. (R. 322.) One month later, on November 18, 2004, Dr. Bharam determined that Plaintiff could return to full duty. (R. 324.) However, on January 14, 2005, Plaintiff visited Dr. Bharam again for pain and stiffness in her hip. (R. 314.) Dr. Bharam noted Plaintiff's advancing arthritis based on an x-ray examination and recommended that Plaintiff receive Hyalgan injections. (*Id.*) Moreover, Dr. Bharam found that Plaintiff might be a

4

candidate for a hip replacement surgery in the future. (*Id.*)

On April 3, 2006, Dr. Touliopoulos recommended right total hip replacement surgery for Plaintiff. (R. 315-16.) One year later, on February 21, 2007, Dr. Vlattas conducted a physical examination of Plaintiff and "filled up [sic] paperwork for her to continue on restricted duty." (R. 243.) The next day, a bilateral hip x-ray showed that Plaintiff had a severe arthritis in her right hip. (R. 180, 189.) On March 1, 2007, because of Plaintiff's severe arthritis, Dr. Salvati performed hip replacement surgery on Plaintiff. (R. 180-84.)

On December 17, 2007, two months after the second accident and four days before the alleged onset of her disability, Plaintiff visited Dr. Moosazadeh and complained of pain aggravated by cold weather and prolonged standing. (R. 205.) He opined that Plaintiff may continue current "light duty" work, but also stated that "further assessment would be warranted," if Plaintiff's symptoms continue. (*Id.*)

### B. Medical Evidence On or After Alleged Onset Date of December 17, 2007

On the date of the onset, December 17, 2007, Plaintiff visited Dr. Moosazadeh again and complained of two to three days of right hip pain that was aggravated by standing. (R. 206.) Unlike his previous report, Dr. Moosazadeh did not conclude that Plaintiff could return to "light duty." (*Id.*) Instead, Dr. Moosazadeh noted that Plaintiff "remains disabled," and advised her to use ambulatory assistance and continue physical therapy. (*Id.*) On January 11, 2008, Dr. Moosazadeh again reported that Plaintiff "remains disabled," and noted Plaintiff's complaint that prolonged sitting aggravates her pain. (R. 207.) Following the January 11, 2008 visit, Plaintiff visited Dr. Moosazadeh on at least four occasions,[5] but Dr. Moosazadeh did not specifically

---

[5] The record suggests that Plaintiff visited Dr. Moosazadeh on monthly basis because Dr. Moosazadeh repeatedly recommended Plaintiff to follow up in four weeks intervals. (R. 342-47.) However, the record does not contain Dr. Moosazadeh's report for each visit, so it is unclear whether Plaintiff visited Dr. Moosazadeh on a monthly basis or only five times after the onset

describe Plaintiff's work related limitations, except for a notation in an April 27, 2009 report that Plaintiff "remains disabled from her employment." (*Id.*)

## DISCUSSION

**I.     Standard of Review**

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F. 3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.*, 685 F. 2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide

---

date. For example, on January 11, 2008, Dr. Moosazadeh prescribed Plaintiff to return in four weeks, (R. 343), but the record does not contain Dr. Moosazadeh's report from February 2008. Similarly, on August 28, 2008, Dr. Moosazadeh directed Plaintiff to return in four weeks, (R. 346), but the record does not contain the physician's report from September 2008.

a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan,* 168 F. 3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). An ALJ, unlike a district judge, has an affirmative duty to "develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F. 3d 770, 774 (2d Cir. 1999).

Where, as here, the claimant was "handicapped by lack of counsel" at the administrative hearing, the administrative law judge has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." and the reviewing court has a duty to "make a searching investigation of the record" to ensure that the claimant's rights have been adequately protected. *Cutler v. Weinberger*, 516 F. 2d 1282, 1286 (2d Cir. 1975); *Hankerson v. Harris*, 636 F. 2d 893, 895 (2d Cir. 1980). The reviewing court's duty to "make a searching investigation of the record" applies even when a claimant was *pro se* at the hearing and obtains a counsel on appeal. *Hankerson*, 636 F. 2d at 895.

## II. Disability Claims

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic

techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F. 2d 638, 642 (2d Cir. 1983). An ALJ must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step, the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment," without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled, if his or her impairment meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 ("Appendix 1"). *See* 20 C.F.R. § 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding about the claimant's "residual functional capacity" ("RFC") in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the claimant is not disabled, if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F. 3d 468, 472 (2d Cir. 2002) (citing *Carroll,* 705 F. 2d at 642).

### III.   ALJ's Decision

On September 30, 2009, the ALJ issued his decision denying Plaintiff's claim for

disability benefits. (R. 51-63.) The ALJ followed the five-step procedure to make his determination that Plaintiff could return to her previous work and, therefore, is not disabled. (*Id.*) At the first step, the ALJ found that Plaintiff had not worked since her alleged onset date, December 17, 2007. (R. 53.) At the second step, the ALJ concluded that Plaintiff suffered from the following severe impairments: bilateral left hip pain, status post total right hip replacement surgery, and consequential left hip pain.[6] (*Id.*) At the third step, the ALJ concluded that these impairments in combination or individually did not meet or equal an impairment listed in 20 C.F.R Part 404, Subpart P, Appendix 1. (R. 58.) The parties do not dispute these findings.

At the fourth step, the ALJ determined that Plaintiff retained the requisite RFC to perform sedentary work, and that Plaintiff could return to her past relevant work as a receptionist, with certain limitations. (R. 59-62.) The ALJ found that Plaintiff could: (i) stand and/or walk for two hours in an eight-hour workday, with no more than twenty minutes of continuous standing and/or walking; (ii) sit for up to six hours in an eight-hour workday; and (iii) lift and/or carry no more than ten pounds occasionally and less than ten pounds frequently. (R. 59.) In reaching these conclusions, the ALJ accorded "substantial weight" to a consultative physician's opinion, which concluded that Plaintiff had no restrictions for standing, walking or sitting. (R. 61-62, 284.) The ALJ accorded only "some weight" to an opinion from Dr. Moosazadeh, Plaintiff's treating physician. (R. 61-62.) The ALJ reasoned that Dr. Moosazadeh "has stated that the claimant is disabled . . . without providing specific limitations." (R. 61.)

---

[6] Plaintiff also testified at the hearing that she suffered from neck and back pain, but the ALJ found that the medical evidence contained in the case record does not support these alleged symptoms. (R. 53-54.) Plaintiff does not dispute this finding.

9

## IV. Application

### A. Developing the Administrative Record

Plaintiff asserts that the ALJ erred by not giving controlling weight to her treating physician, because, *inter alia*, the ALJ had a duty to develop the record further once he determined that the treating physician's opinions were based upon insufficient evidence. (Pl. Mem. 13-22.) The Commissioner responds that there was sufficient evidence in the record from the treatment notes of Plaintiff's treating physician and other sources to support the ALJ's decision to discount Plaintiff's treating physician's opinions. (*See* Def.'s Reply Mem. of Law in Further Supp. of His Mot. for J. on the Pleadings, Dkt. Entry 18 ("Comm'r Reply"), at 4-8.)

As part of the ALJ's fundamental duty to develop the record, he is responsible for seeking additional information when the treating physician has not provided an adequate basis to determine a claimant's disability. *See* 20 C.F.R. § 404.1512(d)-(e) (describing responsibility to develop the record); *Shaw v. Chater*, 221 F. 3d 126, 134 (2d Cir. 2000) ("For the ALJ to conclude that plaintiff presented no evidence of disability at the relevant time period, yet to simultaneously discount the medical opinion of his treating physician, violates his duty to develop the factual record, regardless of whether the claimant is represented by legal counsel."). In describing this duty, the Second Circuit has explained that a treating physician's failure to provide a full explanation or clinical findings supporting his or her determination that a plaintiff is disabled, "does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case." *Clark v. Comm'r of Soc. Sec.*, 143 F. 3d 115, 118 (2d Cir. 1998); *Schaal*, 134 F. 3d at 505 ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [Plaintiff's treating physician] *sua sponte*."). It is even more

critical that the ALJ develop the record where, as here, the plaintiff is proceeding *pro se* at the hearing. *See Hankerson*, 636 F. 2d at 895 (Where the plaintiff is proceeding *pro se*, the ALJ must "probe into, inquire of, and explore for all the relevant facts.").

Here, Plaintiff's treating physician at the time of the hearing, Dr. Moosazadeh, opined that Plaintiff "remains disabled from her employment," but did not provide his reasoning in any great detail. (*See* R. 209.) The ALJ decided to give only "some weight" to Dr. Moosazadeh's opinion because he did not provide "specific limitations." (R. 61.) The ALJ's reason, without more, is insufficient. If the ALJ determined that he needed the benefit of more specific information from Dr. Moosazadeh, then it was up to the ALJ to obtain it. Nothing in the case record suggests that the ALJ contacted Dr. Moosazadeh, or any of the other four treating physicians who worked with Dr. Moosazadeh, for further information. Under these circumstances, the absence of an opinion that Plaintiff could not perform certain physical acts only demonstrates the absence of the opinion, which is not the same as an affirmative declaration that she could perform these acts. *Cf. Pimenta v. Barnhart*, 2006 WL 2356145, at *5 (S.D.N.Y. Aug. 14, 2006) ("[T]he absence of a statement that the plaintiff is precluded from all work is not the same as an affirmative declaration that he is able to return to employment.").

While Dr. Moosazadeh's reports are silent as to Plaintiff's ability to sit for prolonged periods, they largely focus on other aspects of her recovery from hip replacement surgery, such as her need to use a cane when she walks (R. 197), the degree to which she could move her hip (R. 199), and the strength in her hips. (R. 336.) In discussing Dr. Moosazadeh's reports, the ALJ only described findings relating to the movement and strength of Plaintiff's hip. (*See* R. 61.) It is unclear how these evaluations relate to the pain Plaintiff purportedly experiences when she sits for a long period of time. This information is relevant because working as a receptionist

requires sitting for prolonged periods. (*See* R. 32.) Therefore, the ALJ was required to assess whether Plaintiff can sit long enough to perform her past relevant work. Without the benefit of any opinion or information on this subject from Plaintiff's treating physician, the record is incomplete.

The Commissioner contends that it is the ALJ's prerogative to resolve conflicting evidence and, therefore, could discount Dr. Moosazadeh's opinion in favor of the opinion by a consulting physician, Dr. Calvino, that Plaintiff had no restriction in sitting. (Comm'r Reply 7; R. 61-62.) However, while ultimately it is up to the ALJ to decide whether to credit Dr. Calvino over Dr. Moosazadeh to the extent their opinions conflict, the ALJ first must obtain sufficient information from the treating physician to evaluate his opinion properly. The ALJ cannot simply point to the absence of information, such as a full description of Plaintiff's limitations, as his sole reason for not giving Dr. Moosazadeh's opinion controlling weight, without first obtaining more information from Dr. Moosazadeh and amplifying the record.

The Commissioner also asserts that Dr. Moosazadeh's reports show that Plaintiff can perform sedentary work because Dr. Moosazadeh opined that Plaintiff could "return to light duty." (*See* Def. Mem. 5-6.) The ALJ did not articulate this reasoning in his decision, and the court cannot accept such *post hoc* rationalization. *See Snell v. Apfel*, 177 F. 3d 128, 134 (2d Cir. 1999) ("A reviewing court may not accept appellate counsel's *post hoc* rationalizations for agency action." (quotation marks omitted)). In addition, the reports to which the Commissioner refers were written before the alleged onset date of Plaintiff's disability. (*See* R. 204, 229-30, 232, 236-37, 239.)

Therefore, the court concludes that the ALJ erred in failing to seek additional information from Dr. Moosazadeh. On remand, the ALJ must develop the record further by seeking from Dr.

Moosazadeh his opinion and clinical findings relating to Plaintiff's ability to perform sedentary work, particularly her ability to sit for long periods.

B.     **Plaintiff's Credibility**

Plaintiff contends that the ALJ did not assess Plaintiff's credibility in accordance with the applicable regulations, specifically ignoring Plaintiff's extensive work history. (*See* Pl. Mem. 22-26.)  The Commissioner counters that the ALJ acknowledged Plaintiff's work history, and was not required to credit her testimony just because she had been employed in the past. (*See* Comm'r Reply 8-9.)

The Second Circuit recognizes that subjective allegations of pain may serve as a basis for establishing disability. *Taylor v. Barnhart,* 83 F. App'x 347, 350 (2d Cir. 2010). However, the ALJ is afforded the discretion to assess the credibility of a claimant and is not "required to credit [plaintiff's] testimony about the severity of her pain and the functional limitations it caused." *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 434 (S.D.N.Y. 2010) (quoting *Rivers v. Astrue*, 280 F. App'x 20, 22 (2d Cir. 2008)). In determining Plaintiff's credibility, the ALJ must adhere to a two-step inquiry set forth by the regulations. *See Peck v. Astrue*, 2010 WL 3125950, at *4 (E.D.N.Y. Aug. 6, 2010). First, the ALJ must consider whether there is a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. § 404.1529(b). Second, if the ALJ finds that the individual suffers from a medically determinable impairment that reasonably could be expected to produce the pain or symptoms alleged, then the ALJ is to evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which they limit the individual's ability to work. 20 C.F.R. § 404.1529(c)(1).

Where the ALJ finds that the claimant's testimony is not consistent with the objective medical evidence, the ALJ is to evaluate the claimant's testimony in light of seven factors: 1) the claimant's daily activities; 2) the location, duration, frequency, and intensity of the pain; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; 5) any treatment, other than medication, that the claimant has received; 6) any other measures that the claimant employs to relieve the pain; and 7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain. 20 C.F.R. § 404.1529(c)(3)(i)-(vii). "If the ALJ rejects plaintiff's testimony after considering the objective medical evidence and any other factors deemed relevant, he must explain that decision with sufficient specificity to permit a reviewing court to decide whether there are legitimate reasons for the ALJ's disbelief." *Correale-Englehart,* 687 F. Supp. 2d at 435.

While the ALJ undertook an extensive analysis of Plaintiff's credibility in light of the 20 C.F.R. § 404.1529(c)(3) factors, it appears from the record that the ALJ did not take into account Plaintiff's prior work history or explain how it factored into his credibility analysis. (*See* R. 59-61.) The Second Circuit has held that a claimant with a good work record is entitled to "substantial credibility" when claiming an inability to work because of a disability. *Rivera v. Schweiker*, 717 F. 2d 719, 725 (2d Cir. 1983) (citing *Singletary v. Sec'y of Health, Educ. & Welfare*, 623 F. 2d 217, 219 (2d Cir. 1980)); *see also* 20 C.F.R. § 404.1529 ("We will consider all of the evidence presented, including information about your prior work record . . . ."). Here, Plaintiff has a considerable work history, including ten years as a corrections officer, preceding the alleged onset of her disability. The ALJ should have considered this fact and clarified how it factored into his credibility determination. Therefore, while a prior work history does not automatically entitle Plaintiff to a positive credibility determination, the ALJ must explicitly

14

consider it on remand in assessing Plaintiff's credibility. *See Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011).

### C. Vocational Expert Testimony

Plaintiff also contends that the ALJ's hypotheticals to the vocational expert ("VE") were inadequate because they did not describe any limitations to the amount of time Plaintiff could sit continuously before taking a break. (*See* Pl. Mem. 26-30.) Plaintiff asserts that this limitation could have affected the VE's opinions as to whether someone with Plaintiff's limitations could perform the work of a receptionist. (*See id.*) The Commissioner responds that there is no supporting medical evidence that Plaintiff could not sit for prolonged periods, and, therefore, the ALJ did not have to include limitations that did not exist on the record. (*See* Comm'r Reply 9-10.)

An ALJ is permitted to rely on a vocational expert's testimony regarding a hypothetical provided the facts of the hypothetical are based on substantial evidence and accurately reflect the limitations and capabilities of the claimant. *See Dumas v. Schweiker,* 712 F. 2d 1545, 1553-54 (2d Cir. 1983). Here, as discussed *supra* § IV.C, the ALJ failed to develop the record sufficiently as to Plaintiff's limitations in sitting for prolonged periods of time. Accordingly, on remand, after obtaining and considering additional information from Dr. Moosazadeh, the ALJ must reconsider whether it is appropriate to seek additional testimony from a VE and modify his hypotheticals to include the new evidence of limitations, particularly as it relates to the amount of time Plaintiff can sit continuously.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion is denied and Plaintiff's motion for judgment on the pleadings is granted. Accordingly, pursuant to the fourth and sixth sentences of 42 U.S.C. § 405(g), the Commissioner's decision is reversed and this matter is remanded for further administrative proceedings consistent with this opinion. On remand the ALJ shall: (i) fully develop the administrative record by obtaining more information from the treating physician as to Plaintiff's limitations; (ii) reassess Plaintiff's credibility in light of her prior work history; and (iii) obtain new VE testimony using modified hypotheticals, if appropriate, in light of any new evidence acquired by the ALJ.

SO ORDERED

DATED:    Brooklyn, New York
              September 10, 2012

                                                   _____/s/_____
                                                        DORA L. IRIZARRY
                                                  United States District Judge